# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YADIRA CARDENAS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. EDCV17-01525-AFM<br><br>**MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF COMMISSIONER** |

Plaintiff filed this action seeking review of the Commissioner's final decision denying her applications for disability insurance benefits and supplemental security income. In accordance with the Court's case management order, the parties have filed memorandum briefs addressing the merits of the disputed issues.[1] This matter is now ready for decision.

## BACKGROUND

Plaintiff filed applications for disability insurance benefits and supplemental security income on July 2, 2013, alleging disability beginning March 1, 2005. Her

---

[1] Defendant's memorandum was mislabeled as a motion for summary judgment. (ECF No. 19.)

applications were denied on initial review and on reconsideration. (Administrative Record ["AR"] 178-198.) A hearing took place before an Administrative Law Judge ("ALJ") on February 17, 2016. Plaintiff, who was represented by counsel, testified at the hearing, as did a vocational expert ("VE"). The ALJ issued a decision dated March 11, 2016, finding that Plaintiff was not under a disability within the meaning of the Social Security Act ("the Act") from March 1, 2005 through the date of the decision. (AR 63-73.) The Appeals Council subsequently declined review, rendering the ALJ's decision the final decision of the Commissioner. (AR 1-7.)

## DISPUTED ISSUE

Whether the ALJ failed to properly consider Plaintiff's subjective complaints.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## THE ALJ'S DECISION

The ALJ found that Plaintiff suffered from severe impairments – namely, lumbar spine degenerative disk disease, diabetes, left lower extremity disorder, and

obesity – but that no impairment or combination of impairments met or medically equal the severity of one of the listed impairments. (AR 67-68.) Based upon her review of the record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined by 20 C.F.R. 404.1567(a) and 416.967(a) except lifting/carrying 20 pounds occasionally and 10 pounds frequently; pushing/pulling within the weight limits of lifting/carrying; standing and/or walking for one hour in an eight-hour workday; sitting for eight hours in an eight-hour workday; no ladders, ropes, or scaffolds; no crawling; rarely stairs, bending or crouching; no work hazards such as working at unprotected heights, operating fast or dangerous machinery, or driving commercial vehicles; and requires the use of a cane for any prolonged walks. (AR 69.) Accepting the testimony of the VE, the ALJ determined that given Plaintiff's RFC, she was capable of performing jobs existing in significant numbers in the national economy. (AR 72.)

**DISCUSSION**

Where, as here, a claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ must provide "specific, clear and convincing reasons" for rejecting the claimant's testimony regarding the severity of pain or other symptoms. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell*, 775 F.3d at 1138 (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). Further, the ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-

*Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 345-46 (9th Cir. 1991) (en banc)). An ALJ may consider a variety of factors ordinarily used in assessing credibility, including inconsistencies within the claimant's testimony or between the claimant's testimony and the claimant's conduct, the claimant's work record, and information from physicians, relatives, or friends concerning the nature, severity, and effect of the claimant's symptoms. *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002); *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *Fair v. Bowen*, 885 F.2d 597, 604 n.5 (9th Cir. 1989). Since the Commissioner has not argued that there was evidence of malingering, the "clear and convincing" standard applies to the ALJ's adverse credibility determination. *See Burrell*, 775 F.3d at 1136.

Plaintiff alleged disability due to symptoms related to diabetes, high blood pressure, leg and back pain, and carpal tunnel syndrome. (AR 121, 335.) At the hearing, Plaintiff testified that she generally used a walker but sometimes used a wheelchair and had done so "off and on" for six years. (AR 116.) She stated that she needed a walker or wheelchair because of stiffness in her left leg. (AR 116.) Plaintiff explained that she previously used a cane, but discontinued approximately three years prior to the hearing because she was too heavy to be supported by a cane. (AR 116-117, 119.) Plaintiff estimated that she could walk using a walker for five minutes before becoming tired; could stand for a period of ten to fifteen minutes before becoming tired; could sit for a period of fifteen minutes before experiencing pain and needing to stand up; could not bend down and kneel; and as of approximately one year before the hearing, she was unable to climb stairs. (AR 125-129.)

The ALJ provided the following reasons for discounting Plaintiff's testimony as to the severity of her symptoms: (1) Plaintiff received generally routine and conservative treatment; (2) the objective medical evidence supported the ALJ's RFC; (3) Plaintiff's testimony contained inconsistencies; and (4) Plaintiff's daily

4

activities were inconsistent with the severity of her alleged limitations. (AR 71-72.)

### 1. Conservative treatment

An ALJ may properly consider a claimant's conservative treatment in assessing the credibility of her subjective complaints. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 n.2 (9th Cir. 2015) ("routine or conservative" treatment is a clear and convincing reason for which an ALJ may reject a claimant's testimony about symptom severity); *Parra v. Astrue*, 481 F.3d 742 (9th Cir. 2007) (conservative treatment consisting of over the counter pain medication was sufficient reason to discount a claimant's testimony regarding the severity of their symptoms).

Here, the ALJ discounted Plaintiff's allegations regarding the severity of her pain and symptoms in part because the medical record revealed that she received routine and conservative treatment. (AR 71-72.) The ALJ's characterization of Plaintiff's treatment is supported by substantial evidence. As the ALJ accurately noted, Plaintiff's complaints of disabling leg and back pain were treated only with referrals for diagnostic testing – none of which revealed any significant findings – and generally with over-the-counter medication, namely ibuprofen. (AR 71, 418-419, 426, 439-440, 448-453.) Plaintiff points to nothing in the record suggesting that any physician recommended, or petitioner sought, more aggressive treatment, such as narcotic pain medication, steroid injections, or surgery. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1166 (9th Cir. 2001) (ALJ properly rejected the claimant's testimony because he did not use "Codeine or Morphine based analgesics that are commonly prescribed for severe and unremitting pain"); *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (a physician's failure "to prescribe ... any serious medical treatment for [a claimant's] supposedly excruciating pain" may be evidence of conservative treatment). Plaintiff points out that she was prescribed gabapentin for her nerve disorder (*see* AR 438, 449), but this medication alone does not alter the conservative nature of her treatment. *See Rodriguez v. Colvin*, 2016 WL 552648, at *2 (C.D. Cal. Feb. 10, 2016) (ALJ properly characterized claimant's

treatment as conservative and rejected subjective complaints where claimant was prescribed gabapentin and did not rely solely on over-the-counter medication).

The ALJ also noted that Plaintiff's blood pressure and carpal tunnel syndrome were managed, and no aggressive treatment was recommended or anticipated for either condition. (AR 68.) With regard to her diabetes, Plaintiff was prescribed Metformin, but she reported that she had stopped taking the medication in 2013. The medical records confirm that Plaintiff's diabetes condition was managed with oral medication. (*See* AR 71-72, 122, 419, 422, 424, 426, 439-440, 446, 448.) *See Warre v. Comm'r of Social Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

Plaintiff contends that the ALJ erroneously inferred that over-the-counter medication provided total relief of her symptoms because if that were true, Plaintiff "would presumably not be complaining of [pain] to her provider." (Plaintiff's Mem. at 8.) In support of this argument, Plaintiff points out that notwithstanding the medication, she continued to report back and leg pain, and that on one occasion she reported burning pain, numbness, and tingling in her legs. (Plaintiff's Mem. at 7-8 (citing AR 448, 451-452).) Plaintiff's argument is unpersuasive. The reports on which Plaintiff relies merely reflect her subjective complaints of pain, and so they beg the question. The fact that Plaintiff reported experiencing pain does not undermine the ALJ's conclusion that Plaintiff's physicians did not recommend or prescribe anything more than conservative treatment for her complaints.[2] Accordingly, the ALJ properly relied upon Plaintiff's conservative treatment to discredit her subjective complaints. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (ALJ properly considered the claimant's use of "conservative

---

[2] It is also noteworthy that the report Plaintiff cites as evidence of her complaint of burning pain also includes Plaintiff's acknowledgement that "[t]he pain is relieved by OTC medicines (ibuprofen)." (AR 451.)

6

treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset").

### 2. Lack of objective medical evidence

"Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (lack of objective medical evidence to support claimant's subjective complaints constitutes substantial evidence in support of an ALJ's adverse credibility determination).

Here, the ALJ accurately summarized the objective medical evidence and concluded that it did not support the severity of Plaintiff's allegations. (AR 71.) In particular, the ALJ noted during an examination in August 2015, Plaintiff exhibited left foot and ankle swelling, non-pitting edema and painful range of motion, but otherwise her physical examination was unremarkable. (AR 71, 454.) During that examination, Plaintiff indicated that her pain was relieved with over-the-counter ibuprofen. (AR 451.) Plaintiff's December 1, 2015 physical examination revealed edema in the left calf, severity 2+ and pitting type, but otherwise her physical examination was unremarkable. (AR 71, 446-450.) Physical examination on December 30, 2015 revealed mild swelling and stiffness in the left leg, tenderness in the low back, shoulder, and ankle. Otherwise, the physical examination was unremarkable. (AR 417-418.) Plaintiff was prescribed Metformin, lisinopril and ibuprofen. (AR 418, 424, 426.)

The ALJ also noted that Plaintiff's diagnostic tests showed minimal, if any, findings. Specifically, Plaintiff's 2013 lumbar spine images showed mild to moderate degenerative disc disease from L1 to L3 and mild degenerative disease at L5-S1 (AR 71, 416); September 2015 images of Plaintiff's lumbar spine showed moderate degenerative disc disease, most notably at L2-L3 (AR 71, 442); a September 2015 X-ray of Plaintiff's ankle showed a "tiny calcaneal spur" (AR 71,

441); X-rays of Plaintiff's left knee from the same date were unremarkable (AR 71, 443); and a February 2016 ultrasound of Plaintiff's legs revealed no evidence of deep venous thrombosis bilaterally (AR 71, 444).

As the ALJ noted, Plaintiff had surgery for carpal tunnel syndrome in 2002 and nothing in the medical records suggesting that additional treatment was either anticipated or recommended. (*See* AR 68, 70, 82, 100, 122, 127, 435.) In addition, the ALJ noted that Plaintiff's high blood pressure and diabetes were effectively treated with medication, and her diabetes was noted to be without complication. (AR 68, 71-72, 439, 446.)

In light of the foregoing record, the ALJ properly relied upon the absence of objective medical support as one factor in her decision to discount Plaintiff's subjective complaints.

### 3. Inconsistencies in Plaintiff's testimony

An ALJ may use ordinary techniques of credibility evaluation, such as the claimant's prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid. *See Molina*, 674 F.3d at 1112; *Tommasetti*, 533 F.3d at 1039. If the ALJ's finding is supported by substantial evidence, the Court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959.

Here, in assessing the credibility of Plaintiff's subjective complaints, the ALJ considered what she found to be inconsistencies in Plaintiff's testimony. In particular, the ALJ noted that Plaintiff testified that she was no longer able to use a cane because she was too heavy. At the time, Plaintiff weighed 190 pounds. (AR 70, 72, 116-117, 119, 122.) Yet, the medical records (and the testimony at the hearing) showed that Plaintiff used a cane at the time of her consultative examination in September 2013 when she was heavier, weighing 205 pounds. (AR 72, 119-120, 413-415.) The ALJ also noted that despite Plaintiff's protestations that she needed a walker or wheelchair, no physician had ever recommended an

assistive device. (AR 72.)

Plaintiff argues that her testimony was not inconsistent because she had explained that her ability to use a cane decreased over time. Notwithstanding Plaintiff's assertion, the ALJ's interpretation of the record was both reasonable and supported by substantial evidence. The fact that an alternative interpretation of the record may have been possible does not warrant reversal. *See Orn*, 495 F.3d at 630 (where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld).

Plaintiff also contends that the ALJ improperly relied on the absence of a prescription for a walker or wheelchair because new evidence submitted to the Appeals Council showed that Plaintiff was prescribed a walker in September 2016. (Plaintiff's Mem. at 9.) Relying upon *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157 (9th Cir. 2012), Plaintiff argues that the Court must consider the September 2016 prescription in reviewing the ALJ's decision.

*Brewes* held that "when a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence." *Id.* at 1159-1160. The Ninth Circuit's decision was based upon the regulations, which require the Appeals Council to consider new evidence submitted by a claimant, "so long as the evidence relates to the period on or before the ALJ's decision." *Id.* at 1162 (citing 20 C.F.R. § 404.970(b)). Significantly, *Brewes* involved later-submitted evidence that the Appeals Council "made part of the record." *Id.* at 1161.

Unlike *Brewes*, the Appeals Council here explicitly declined to consider the September 2016 prescription for a walker, explaining that the evidence was not relevant to Plaintiff's disability at a date prior to the ALJ's March 11, 2016 decision. (AR 2.) Further, in identifying the additional evidence which it made part

of the record, the Appeals Council did not include the prescription. (AR 6.) Accordingly, the Court rejects Plaintiff's contention that it must consider the prescription as evidence undermining the ALJ's decision. *See Smith v. Berryhill*, 2017 WL 993072, at *13 (N.D. Cal. Mar. 15, 2017) (distinguishing *Brewes* and declining to consider evidence that post-dated ALJ's decision to be part of the administrative record where Appeals Council "expressly rejected [that evidence] as falling outside the relevant time period"). In any event, even if this evidence regarding a walker prescription was considered, it would not remove the inconsistencies in Plaintiff's testimony regarding use of a cane.

### 4. Daily activities

An ALJ may properly rely on a claimant's daily activities to support an adverse credibility determination when those activities are inconsistent with the claimant's alleged symptoms. *See Molina*, 674 F.3d at 1112.

Here, Plaintiff reported that her typical day was spent sitting down, "trying to do kitchen work" such as washing dishes, preparing breakfast and dinner for her husband and children, and doing some laundry, although she required assistance moving clothes into the dryer and putting them away. (AR 130-131.) Plaintiff testified that she was able to go to the grocery store and that she went with her husband once a month. (AR 131-132.) In addition, Plaintiff was able to bathe and dress herself. (AR 132.) In her function report, which Plaintiff completed in August 2013, Plaintiff stated that her daily activities included a "routine of housework" which she completed "little [by] little," and which included mopping, sweeping, and doing the dishes. (AR 342-343.) By the time of the hearing, however, Plaintiff testified that she was not able to vacuum, dust or sweep. (AR 131.)

The ALJ described Plaintiff's daily activities as "sitting down, picking up, washing dishes, preparing breakfast and dinner, doing laundry, putting clothes in the washer and dryer with the help of her husband and son, going shopping once a month, and watching television," and noted that Plaintiff bathed and dressed

herself. (AR 70.) The ALJ then concluded that Plaintiff's "ability to participate in such activities undermined [her] allegations of disabling functional limitations." (AR 70.) In addition, the ALJ explained:

> Despite her alleged impairments, the claimant has engaged in a somewhat normal level of daily activity and social interaction as noted above. These daily activities support the residual functional capacity. Moreover, some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment.

(AR 70.)

The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1015-1016 (9th Cir. 2014). Indeed, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

Here, the ALJ merely referred to Plaintiff's daily activities and concluded that they were generally inconsistent with Plaintiff's claimed disability. The ALJ failed to describe how any particular daily activity was inconsistent with any specific claims made by Plaintiff or explain how any daily activity corresponded with obtaining and maintaining employment. This was legally insufficient. *See Burrell*, 775 F.3d at 1138 ("the ALJ did not elaborate on *which* daily activities conflicted with *which* part of Claimant's testimony"); *Lester*, 81 F.3d at 834 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.").

11

Nevertheless, although the ALJ's lack of specificity renders her reliance upon Plaintiff's daily activities improper, this error is harmless in light of the other sufficiently clear and convincing reasons supporting her credibility determination. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (where the ALJ presented four other independent proper bases for discounting the plaintiff's testimony, reliance on claimant's continued smoking to discredit her, even if erroneous, amounted to harmless error); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (ALJ's error in relying on claimant's receipt of unemployment benefits and on relatively conservative pain treatment regime was harmless where ALJ provided other specific and legitimate reasons for finding claimant's testimony incredible); *Batson*, 359 F.3d at 1197 (even if the record did not support one of ALJ's stated reasons for disbelieving claimant's testimony, the error was harmless).

\* \* \*

In sum, the ALJ did not commit reversible error in making the adverse credibility determination. The ALJ provided clear and convincing reasons for discounting Plaintiff's testimony regarding her subjective complaints, and those reasons are supported by substantial evidence.

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

DATED: 4/16/2018

_____
ALEXANDER F. MacKINNON
UNITED STATES MAGISTRATE JUDGE